UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

DONNALYN FANNIN,                         )
                                         )
                 Plaintiff,              )
                                         )
v.                                       )        No.      3:17-cv-236-DCP
                                         )
NANCY A. BERRYHILL,                      )
Acting Commissioner of Social Security,  )
                                         )
                 Defendant.              )

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 18].  Now before the Court is

Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 19 & 20] and

Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 23 & 24].

Donnalyn Fannin ("Plaintiff") seeks judicial review of the decision of the Administrative Law

Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner").  For

the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's

motion.

## I.      PROCEDURAL HISTORY

On January 19, 2012, Plaintiff filed a Title II application for disability insurance benefits

[Tr. 93–94, 264–72], and subsequently protectively filed a Title XVI application for supplemental

security income benefits on February 7, 2012 [Tr. 273–77], pursuant to Title II and XVI of the

Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and 1381 *et seq.*, claiming a period of disability that

began on December 12, 2011.  [Tr. 273, 281].  After her application was denied initially and upon

reconsideration, Plaintiff requested a hearing before an ALJ.  [Tr. 160].  After a hearing was held

on December 3, 2013 [Tr. 198], on April 3, 2014, the ALJ found that Plaintiff was not disabled. [Tr. 128–38]. However, the Appeals Council remanded the case on July 6, 2015. [Tr. 144–46]. A second hearing before the ALJ was conducted on January 26, 2016, wherein the ALJ obtained additional hearing testimony from Plaintiff and a vocational expert ("VE"). [Tr. 44–70]. The ALJ thereafter rendered an unfavorable decision on May 16, 2016, finding that Plaintiff was not disabled. [Tr. 26–37]. The Appeals Council denied Plaintiff's Request for Review on April 14, 2017 [Tr. 1–5], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on June 2, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since December 12, 2011, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).
>
> 3. The claimant has the following severe impairments: arthrosis of the hip (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and

416.967(c). The claimant could frequently perform all postural activities, except she can only occasionally climb ladders, ropes, or scaffolds.

6. The claimant is capable of performing past relevant work as a childcare provider and coat presser. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 25, 2964 and was 47 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date and she is currently 52 years old, which is defined as an individual approaching advanced age on the date of this decision (20 CFR 404.1563 and 416.963).

8. The claimant has not been under a disability, as defined in the Social Security Act, from December 12, 2011, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 26–37].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different

conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.     ANALYSIS

Plaintiff asserts three allegations of error committed by the ALJ. First, Plaintiff argues that the stated RFC determination is not supported by substantial evidence, as the ALJ failed to properly weigh the opinions from all examining sources of record, and instead afforded great weight to the

opinions of the nonexamining state agency physicians. [Doc. 20 at 12–16]. Additionally, Plaintiff contends that the ALJ erred by failing to include mental limitations in the RFC, despite finding that Plaintiff has mild limitations in concentration, persistence, or pace. [*Id.* at 16–18]. Lastly, Plaintiff submits that the ALJ's rejection of Plaintiff's subjective allegations is not supported by substantial evidence. [*Id.* at 18–21]. The Court will address each allegation of error in turn.

### A.      ALJ's Treatment of Medical Opinions

Plaintiff claims that the ALJ failed to assign proper weight to the opinions of examining consultants, Dr. Jeffrey Summers and Dr. Eva Misra, as the ALJ instead gave great weight to the opinions of the nonexamining state agency mental health consultants, Dr. William Downey and Dr. Thomas Thrush. [Doc. 20 at 12–16]. The Commissioner asserts that the ALJ properly provided good reasons for the weight she afforded each medical opinion and properly considered the medical opinions with the entire medical record. [Doc. 24 at 10].

 Opinions from nontreating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). An ALJ is only required to provide good reason for explaining the weight assigned to the opinion of a "treating source." 20 C.F.R. §§ 404.1527(c) and 416.927(c)(2); *see Perry v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012) ("An ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who, like Dr. Pickering, have examined but not treated a claimant."). Lastly,

opinions from one-time consultative examiners are not due any special degree of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

With these principles in mind, the Court turns to the specific errors raised by Plaintiff as to each challenged medical source.

### 1. Opinion of Jeffrey Summers, M.D.

Dr. Summers performed a consultative examination on February 17, 2016. [Tr. 533–42]. Dr. Summers reported that Plaintiff described a longstanding history of low back and right hip pain. [Tr. 542]. On examination, Dr. Summers assessed that Plaintiff exhibited a decrease in range of motion of her lumbar pain and right hip areas, as well as an abnormal gait. [*Id.*]. Dr. Summers noted that Plaintiff had flexion at the waist to 75 degrees, and extension at the waist to 15 degrees, with lateral flexion at the waist to 20 degrees left and 25 degrees right. [*Id.*]. Further, Dr. Summers reported that Plaintiff's flexion of the right hip was 120 degrees, with extension to 30 degrees, abduction to 30 degrees, adduction to 15 degrees, and, lastly, Plaintiff's internal rotation of the right hip was to 30 degrees and external rotation to 60 degrees. [*Id.*]. Dr. Summers noted that Plaintiff's range of motion was full in all other joint areas. [*Id.*].

Dr. Summers assessed the following functional limitations: Plaintiff could lift and carry up to 10 pounds frequently, and up to 20 pounds occasionally; she could sit, stand, and walk for two hours without interruption and for four hours in an eight-hour work day; and that she could occasionally climb stairs, ramps, ladders, or scaffolds, as well as balance, stoop, kneel, crouch, and crawl. [Tr. 533–36]. Additionally, Dr. Summers opined that Plaintiff maintains the ability "to perform retail work, childcare work, etc., for eight hours in a single workday with position changes every two hours." [Tr. 542].

The ALJ assigned Dr. Summers' opinion little weight because: (1) Dr. Summers based his findings on Plaintiff's subjective complaints and Plaintiff's subjective reports of chronic pain are not a medically determinable impairment; (2) the lack of medical evidence and imaging supporting any significant back issue, as well as the ALJ's finding that Plaintiff did not have a medically determinable impairment relating to her back; (3) Plaintiff's lack of treatment in the last three years; (4) Dr. Summers did not review the MRI of Plaintiff's hip; and (5) the range of motion findings were within Plaintiff's control. [Tr. 35].

Plaintiff contends that the ALJ improperly failed to consider the fact that Dr. Summers personally examined Plaintiff, as well as substituted her own opinion over that of Dr. Summers, as she "instead rejected the opinion based upon her own interpretation of the limitations that should result from the clinical findings." [Doc. 20 at 13]. Further, Plaintiff claims that the ALJ failed to discuss an x-ray of Plaintiff's hip which Dr. Summers reviewed on the same day of his examination, as well as improperly held that Dr. Summers' opinion was primarily based on Plaintiff's subjective complaints of pain. [*Id.*].

The Court observes that "[t]he 'playing doctor' prohibition comes into play when the ALJ 'either reject[s] a doctor's medical conclusion without other evidence [or] draw[s] medical conclusions [herself] about a claimant without relying on medical evidence.'" *Russell v. Colvin*, No. 3-15-CV-456-TAV-CCS, 2017 WL 627458, at *7–8 (E.D. Tenn. Jan 18, 2017) (quoting *Hill v. Astrue*, No. 5:12-CV-72-R, 2013 WL 3292657, at *3 (W.D. Ky. June 28, 2013)), *report and recommendation adopted by*, 2017 WL 627448 (E.D. Tenn. Feb. 15, 2017). However, in the present case, the ALJ cited multiple reasons, supported by the record, for discounting Dr. Summers' opinion. *See Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 562 (6th Cir. 2014) ("As the ALJ properly reviewed and weighed the reports to make a legal determination that is

supported by substantial evidence, the assertion that the ALJ was 'playing doctor' is unsupported.").

First, the ALJ held that Dr. Summers' opinion was entitled to little weight because the opinion was based upon Plaintiff's subjective allegations of pain and was not supported by the overall medical record. When evaluating Plaintiff's severe impairments during Step Three of the sequential evaluation, the ALJ noted that although Plaintiff had alleged back pain, a CT scan of her lumbar spine showed only mild bulging, there is no diagnosis in the record of degenerative disc disease, and Plaintiff has not undergone any treatment, physical therapy, or received care from an orthopedic or neurological specialist. [Tr. 29]. The ALJ discussed an MRI of Plaintiff's right hip from May 21, 2013 which only demonstrated findings that suggest the presence of a fibroid within the anterior myometrium, as well as a small amount on nonspecific pelvic free fluid. [Tr. 32]. Further, the report of this MRI stated that "[t]here are no findings to account for patient's right hip pain." [Tr. 448]. The ALJ stated that Dr. Summers did not review this MRI of Plaintiff's hip, but instead based his findings on Plaintiff's subjective complaints. [Tr. 35].

Plaintiff correctly asserts that the ALJ failed to acknowledge that Dr. Summers reviewed an x-ray of Plaintiff's hip, which noted mild to moderate degenerative changes. [Doc. 20 at 13]; *see* [Tr. 539]. However, the Court finds that any error in the ALJ's failure to mention the x-ray taken by Dr. Summers was harmless, as the ALJ stated how Plaintiff's subjective complaints of hip and back pain were not supported by the overall medical record and Plaintiff's lack of treatment for the alleged disabling impairment. Further, the x-ray showed normal bony anatomy, as well as that the articulating surfaces are well maintained, and did not identify any evidence of acute fracture or dislocation. [Tr. 539]. Therefore, as the ALJ accounted for evidence of mild degenerative disc changes but held that the objective medical evidence did not support Plaintiff's

claimed limitations, her failure to mention the x-ray was harmless error. *See Hargis v. Berryhill*, No. 3:13-1096, 2017 WL 3720619, at *9 (M.D. Tenn. Aug. 29, 2017) (holding an ALJ's failure to mention an x-ray noting "moderate degenerative changes of the thoracic spine" did not misprepsent significant medical evidence, as the ALJ "accounted for the radiological evidence of degenerative changes and did not misstate the objective severity of the conditions"); *Hand v. Colvin*, No.2:12-cv-2956-AKK, 2014 WL 3543660, at *3 (N.D. Ala. July 15, 2014) (finding an ALJ's failure to mention a posthearing MRI was not reversible error, as the ALJ discussed the claimant's degenerative disk disease, and "the MRI does not contradict the ALJ's findings or show the presence of a condition not adequately considered by the ALJ in his decision").

The ALJ provided several additional reasons for discounting Dr. Summers' opinion. The ALJ noted in the opinion that Plaintiff's described daily activities were not consistent with her allegations of disabling symptoms. [Tr. 33]. Ultimately, the ALJ stated that Plaintiff's "ability to perform such a variety of daily activities is consistent with the medical evidence of record which indicates she is only slightly limited by her mild hip degenerative change." [*Id.*]. Therefore, the ALJ properly held that Dr. Summers' opinion was entitled to little weight because it was based on Plaintiff's subjective allegations of chronic hip and back pain. *See Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 467 (6th Cir. 2017) (finding "reasoning that a medical opinion relied too heavily on the claimant's subjective complaints [is] adequate to support an ALJ's decision to give little weight to the opinion"); *Long v. Berryhill*, No. 1:16-cv-485-CHS, 2018 WL 1162621, at *7 (E.D. Tenn. Mar. 5, 2018) (rejecting Plaintiff's argument that the ALJ, after stating that the consultative examiner's opinion was based primarily on Plaintiff's subjective complaints, should have identified the evidence which was inconsistent with the consultative examiner's testimony, as "the ALJ described the relevant evidence that undermined Dr. Chandler's opinion throughout

his opinion").

Next, the ALJ properly considered Plaintiff's lack of treatment history in discounting Plaintiff's allegations of disabling back pain. *See* 20 C.F.R. § 404.1529(c)(3)(v) (listing treatment as a relevant factor to be weighed in considering the credibility of a claimant's allegations of pain); *see, e.g.*, *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011) (where the plaintiff's limited treatment was found to be inconsistent with a finding of total disability); *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("A failure to [seek treatment] . . . may cast doubt on a claimant's assertions of disabling pain"). The ALJ stated that Plaintiff's lack of treatment does not support her alleged physical impairments [Tr. 35], noting that Plaintiff had not received any medical treatment since 2013 [Tr. 33]. Moreover, the ALJ detailed that Plaintiff has received only conservative treatment for her hip pain, as "she has had no treatment by a specialist, no physical therapy, no surgical recommendations, and only sporadic treatment by a nurse practitioner." [*Id.*].

Lastly, the ALJ was not required to specifically acknowledge any of the regulatory balancing factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c), including Plaintiff's arguments that Dr. Summers personally examined Plaintiff. Nothing within 20 C.F.R. §§ 404.1527(c) and 416.927(c) mandates that every factor be explicitly addressed. *See McClain-Nelson v. Comm'r of Soc. Sec.*, No. 12-14490, 2014 WL 988910, at *7 (E.D. Mich. Mar. 13, 2014) ("[A]n ALJ is not required to discuss every factor listed in 20 C.F.R. § 404.1527[(c)]."); *see also Buchert v. Comm'r of Soc. Sec.*, No. 3:13-CV-01418, 2014 WL 1304993, at *7 (N.D. Ohio Mar. 27, 2014) (holding same). The ALJ need only "consider" the regulatory balancing factors in determining the appropriate weight a medical opinion deserves. 20 C.F.R. § 416.927(c). Although the examining relationship is a relevant factor in weighing medical opinions, 20 C.F.R. §

11

404.1527(c)(1), "the more consistent an opinion is with the record, as a whole, the more weight" the opinion is entitled.  20 C.F.R. § 404.1527(c)(4).

Accordingly, the Court finds that the ALJ properly weighed the applicable statutory factors and explained the basis for affording little weight to the opinion.  The ALJ assigned little weight to Dr. Summers' opinion because it was based on Plaintiff's subjective complaints; medical evidence did not support a severe back impairment; and Plaintiff's lack of treatment history discounted Plaintiff's allegations of disabling back pain.  Therefore, the Court finds that substantial evidence supports the weight assigned to Dr. Summers' opinion.

### 2. Opinion of Eva Misra, M.D.

Plaintiff challenges the ALJ's treatment of consultative examiner, Dr. Misra's opinion.  [Doc. 20 at 15].  Plaintiff contends that the ALJ improperly discounted Dr. Misra's opinion because her opinion "was based on an in[-]person evaluation."  [*Id.*].  The ALJ assigned little weight to Dr. Misra's opinion, finding that "she did not have access to all of the evidence at the hearing level including the imaging that shows only the most minor of degenerative changes."  [Tr. 35].

Here, Plaintiff was consultatively examined by Dr. Misra on March 28, 2012.  [Tr. 429–32].  Dr. Misra noted that Plaintiff reported that she has had right hip pain for twenty-five years, that she has pressure in her back, and that her pain is 10/10 on the pain scale with medication.  [Tr. 429].  Dr. Misra stated that Plaintiff's gait and station were normal, that she was able to get up from a chair and on and off the table without difficulty, and that her mobility was normal.  [Tr. 430].  Dr. Misra also noted that Plaintiff was not reliable on her medical history.  [*Id.*].

On examination, Dr. Misra found that Plaintiff had full range of motion universally, but "has a slight decreased in her right hip."  [*Id.*].  Additionally, Dr. Misra stated that Plaintiff had abduction to 30 degrees, adduction to 15 degrees, flexion to 90 degrees, extension to 20 degrees,

internal rotation to 30 degrees, and external rotation to 40 degrees actively and passively on the right. [*Id.*]. Further, Dr. Misra noted a slight decrease in the sensation of Plaintiff's right foot. [*Id.*]. Dr. Misra subsequently opined that Plaintiff could "occasionally lift and carry including upward pulling for one-third of an eight-hour workday to a maximum of 20 lbs;" that Plaintiff could frequently lift or carry a maximum of twenty pounds from one-third to two-thirds of an eight-hour workday; that Plaintiff could stand or walk with normal breaks for at least two hours in an eight-hour workday; and that Plaintiff could sit without restriction. [Tr. 431].

As the Court previously stated, in considering the opinions of non-treating physicians, such as Dr. Misra, while an ALJ is not required to defer to her opinion, nevertheless, "in weighing a consultative examiner's opinion, an Administrative Law Judge must evaluate the factors listed in 20 C.F.R. § 404.1527(c)." *Williams v. Colvin*, No. 4:15-CV-00082-HBB, 2016 WL 797594, at *4 (W.D. Ky. Feb. 26, 2016). The ALJ is not required to give "good reasons" for the weight assigned to non-treating and examining consultants, as "this requirement only applies to treating sources." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). However, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ." 20 C.F.R. § 416.927(e)(2)(ii).

The ALJ assigned little weight to Dr. Misra's opinion, finding that she did not have access to all of the objective medical evidence, "including the imaging that shows only the most minor of degenerative changes." [Tr. 35]. The ALJ properly addressed how the medical evidence did not support disabling allegations of hip and back pain. *See, e.g.*, *Hinkle v. Berryhill*, No. 2:17-CV-54, 2018 WL 2437238, at *5 (E.D. Tenn. May 30, 2018) (holding the ALJ properly assigned little

13

weight to a consultative examiner's opinion, as the ALJ detailed how the opinion was not consistent with the examination or medical record, as well as reviewed Plaintiff's subjective allegations). Although Plaintiff argues that the ALJ improperly discounted the opinion of Dr. Misra because her opinion was based on an in-person evaluation, "the ALJ is 'under no special obligation' to provide great detail as to why the opinions of the nonexamining providers 'were more consistent with the overall record' than the examining, but nontreating providers." *Jenkins v. Soc. Sec. Admin.*, No. 3:14-cv-1713, 2017 WL 2692624, at *9 (M.D. Tenn. June 21, 2017) (citing *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012)). Further, as the Court previously stated, the ALJ is not required to explicitly discuss the fact that Dr. Misra examined Plaintiff. *See McClain-Nelson v. Comm'r of Soc. Sec.*, No. 12-14490, 2014 WL 988910, at *7 (E.D. Mich. Mar. 13, 2014) ("[A]n ALJ is not required to discuss every factor listed in 20 C.F.R. § 404.1527[(c)].").

As Dr. Misra was not a treating physician, the ALJ had no heightened articulation requirement as to her opinion. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("[E]ven if the purpose of the reasons-giving requirement in § 404.1527(d)(2) applies to the entire regulation, the SSA requires ALJs to give reasons for only treating sources."). Therefore, as the ALJ stated that Dr. Misra's opinion was not based upon access to the complete medical record, and was inconsistent with the record, the Court finds that substantial evidence supports the ALJ's assignment of little weight to Dr. Misra's opinion.

### 3. Opinions of State Agency Medical Consultants

Plaintiff asserts that the ALJ improperly afforded great weight to the opinions of the nonexamining state agency medical consultants, Dr. William Downey, M.D., and Dr. Thomas Thrush, M.D., "as the ALJ rejected the physical opinion[ ]s from all examining sources of record,

her physical RFC is only supported by the opinions of the State Agency medical consultants," and "as [the ALJ] did not include the limitations opined by Psychological Examiner Garland, her mental RFC also relies solely on the State Agency mental consultants." [Doc. 20 at 15]. Further, Plaintiff alleges that Dr. Downey and Dr. Thrush did not review a significant portion of the record, and the ALJ failed to indicate that she considered this factor in affording their opinions great weight. [*Id.*].

In the disability decision, the ALJ assessed great weight to the opinions of the State agency medical consultants, as their opinions were consistent with the objective medical evidence, Plaintiff's lack of mental health treatment, and daily activities. [Tr. 35–36]. Dr. Downey and Dr. Thrush reviewed the evidence of record at the initial and reconsideration levels, respectively, and found that Plaintiff was able to perform medium level work with certain postural limitations, such as the occasional climbing of ladders, ropes, and scaffolds, as well as that Plaintiff had no more than mild mental limitations. [Tr. 71–92, 95–120].

"State agency medical consultants . . . are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *2 (July 2, 1996)). Therefore, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3. "One such circumstance . . . [is] when the 'State agency medical . . . consultant's opinion is based on review of a complete case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting SSR 96–6p, 1996 WL 374180, at *3). However, when the non-examining source's opinion is based on

review of an incomplete record, there must be an indication that the ALJ considered that fact before giving greater weight to the non-examining source's opinion. *Id.* (quoting *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007)).

In the present case, Plaintiff correctly asserts that Dr. Downey and Dr. Thrush reviewed an incomplete record, as their opinions demonstrate that they did not review Dr. Summers' opinion, including the x-ray which was performed, as well as all additional medical evidence after May 14, 2012 and August 8, 2012, respectively. This additional medical evidence includes the January 22, 2013 opinion of Plaintiff's nurse practitioner, Loretta Turbeville [Tr. 443–45], as well as Plaintiff's treatment record from Cherokee Health Systems on January 22, 2016 and February 8, 2016 [Tr. 519–30]. Further, neither Dr. Downey or Dr. Thrush reviewed Dr. Garland's subsequent opinion on Plaintiff's mental residual functional capacity. [Tr. 73–75, 77, 83–84, 88, 96–99, 102].

"[A]n ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts' before assigning greater weight to an opinion that is not based on the full record." *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493–94 (6th Cir. 2016) (citing *Blakley*, 581 F.3d at 409). In *Spicer*, the Sixth Circuit found that the ALJ had satisfied *Blakley* by reviewing the medical evidence that was entered after the nonexamining state agency consultant's opinion and explaining why the consultant's opinion was afforded greater weight despite the subsequent evidence. *Id.* Similarly, in order for an ALJ to provide "'some indication' that he 'at least considered' that the source did not review the entire record . . . the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (quoting *Blakley*, 581 F.3d at 409).

16

Although the opinions of Dr. Downey and Dr. Thrush were issued on May 14, 2012 and August 8, 2012, the record reflects that the ALJ made an independent determination based on all the medical evidence[1] and that the ALJ's analysis spanned the entire record. *See Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 247–48 (6th Cir. 2016) (affirming ALJ's assessment of great weight to the nonexamining state agency consultant's opinion, rather than the current treating physician opinion found to be inconsistent with the record, as "the ALJ's own analysis clearly spanned the entire record"); *accord Mcwhorter v. Berryhill*, No. 3:14-cv-1658, 2017 WL 1364678, at *12 (M.D. Tenn. Apr. 14, 2017); *Quinlavin v. Comm'r of Soc. Sec.*, No. 15-cv-731, 2017 WL 583722, at *4 (N.D. Ohio Feb. 14, 2017). The ALJ reviewed the opinion of Ms. Turbeville completed after Dr. Downey and Dr. Thrush's opinions, stating that she assigned the opinion little weight because as a nurse practitioner, Ms. Turbeville is not considered an acceptable medical source; Plaintiff did not have a mental impairment that meets the definition of a severe impairment; and Ms. Turbeville's opinions were based on Plaintiff's subjective complaints of pain in her right leg and hip, which were not consistent with the objective medical evidence. [Tr. 34]. Additionally, as the Court has previously detailed, the ALJ assigned little weight to Dr. Summers' opinion as it was based on Plaintiff's subjective reports of chronic pain and Plaintiff's lack of treatment. [Tr. 35]. The ALJ also noted Plaintiff's mild treatment with Cherokee Health Systems, finding that Plaintiff "only had a behavioral intake evaluation and one-follow up visit." [*Id.*].

The ALJ found that the opinions of Dr. Downey and Dr. Thrush were consistent with the objective medical evidence, chiefly the May 21, 2013 MRI of Plaintiff's right hip that

---

[1] While the ALJ failed to mention an x-ray that Dr. Summers reviewed in connection with his personal examination of Plaintiff, the Court has already found that any failure by the ALJ to mention the x-ray when reviewing Dr. Summers's opinion was harmless error. *See supra* Section V(A)(1) at p. 9–10.

demonstrated only mild degenerative changes. [*Id.*]; *see, e.g.*, *Jacks v. Comm'r of Soc. Sec.*, No. 3:15-cv-309, 2017 WL 540922, at *5 (S.D. Ohio Feb. 10, 2017) ("Here, the ALJ specifically noted records post-dating Dr. Thomas's opinion . . . Because the ALJ considered, and in fact relied upon those normal imaging findings . . . the ALJ's weighing of Dr. Thomas's opinion favorably—over the opinions of Nurse Allen and Dr. Smith—falls within the ALJ's permissible 'zone of choice.'"), *report and recommendation adopted by*, 2017 WL 1134506 (S.D. Ohio Mar. 27, 2017). Further, the ALJ held that "[a]ll other medical evidence only documents subjective complaints and tests within [Plaintiff's] control," and that the opinions of the nonexamining state agency medical consultants were also consistent with Plaintiff's lack of treatment, the conservative nature of that treatment, and inconsistencies between Plaintiff's subjective allegations and her reported activities of daily living. [Tr. 35]. With respect to Dr. Downey and Dr. Thrush's opinions that Plaintiff has no more than mild mental limitations, the ALJ held that these opinions were consistent with Plaintiff's lack of mental health treatment and reported daily activities [Tr. 36], as well as found that consultative examiner Dr. Garland's opinion was entitled to great weight to the extent that it supports no more than the mild limitations similar to those opined by the nonexamining state agency consultants [Tr. 35].

Ultimately, although the nonexamining state agency consultants did not review a complete record, "the ALJ's own analysis clearly spanned the entire record," as the ALJ reviewed subsequent medical opinions and stated how the opinions of Dr. Downey and Dr. Thrush were consistent with the objective medical evidence, as well as Plaintiff's lack of treatment and reported daily activities. *See Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 247–48 (6th Cir. 2016). Additionally, the ALJ specifically noted and relied upon the MRI of Plaintiff's hip showing only mild degenerative changes, as well as Dr. Garland's opinion finding only mild mental limitations.

Therefore, the ALJ "subjected [Dr. Downey and Dr. Thrush's] opinion[s] to scrutiny" sufficient to find that she considered that these nonexamining state agency consultants did not review the entire record. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016).

### B.    Lack of Mental Limitations in RFC Determination

Plaintiff argues that the ALJ erred by failing to include mental limitations in the RFC determination despite finding that Plaintiff has mild limitations in concentration, persistence, or pace, as well as the ALJ's acknowledgement that Plaintiff suffers from depression and anxiety. [Doc. 20 at 16]; *see* [Tr. 16–18]. Further, Plaintiff claims that the ALJ failed to include mental limitations asserted by psychological consultative examiner Alice K. Garland, M.S., L.S.P.E., whose opinion the ALJ afforded great weight to the extent it supports no more than mild limitations. [Doc. 20 at 15]; *see* [Tr. 35].

In her Step Three Analysis, the ALJ found that Plaintiff was not limited in her activities of daily living or social functioning, and that Plaintiff has not experienced any episodes of decompensation which have been of extended duration. [Tr. 30]. However, the ALJ found that Plaintiff has mild limitations in concentration, persistence, or pace. [*Id.*]. The ALJ detailed that Plaintiff "reported difficulty completing tasks and handling change," but referenced the Adult Function Report that Plaintiff completed on July 5, 2012. [*Id.*]; *see* [Tr. 359–66]. Additionally, the ALJ cited the Adult Function Report and Dr. Garland's opinion to find that Plaintiff "is also able to drive, care for her grandchildren, perform some household chores, cook, shop, and manage finances." [Tr. 30].

The ALJ noted that although medical records indicate mental impairments of anxiety and depression, Plaintiff only received treatment from Ms. Turbeville from February 2013 to July 2013 and failed to receive any further treatment until January 2016. [Tr. 30]. Additionally, the ALJ

stated that Dr. Garland "only diagnosed rule out alcohol abuse/dependence, rule out cannabis abuse/dependence, and nicotine dependence." [*Id.*]. Dr. Garland's opinion also noted that Plaintiff was not currently receiving mental health treatment. [Tr. 439]. Lastly, Dr. Garland opined that Plaintiff was not limited in her ability to work with the public or ability to do complex and detailed work, she was mildly limited in adaption, and that she was mildly to moderately limited in her ability to persist and concentrate. [*Id.*]. When determining Plaintiff's RFC, the ALJ found that Plaintiff was able to perform medium work, with certain postural limitations. [Tr. 31]. Plaintiff argues that the ALJ should have included additional mental limitations in her RFC determination due to the previous Step Three Findings and the weight given to Dr. Garland's opinion.

However, "Plaintiff's argument—that an ALJ's findings at Step Three, which address whether a claimant meets the requirements of a given Listing, must be incorporated into the RFC— is unsupported by case law." *Hayman v. Berryhill*, No. 3:16-cv-1998, 2017 WL 9476860, at *9 (N.D. Ohio Oct. 30, 2017). "The RFC is a subsequent determination that is distinct and separate from Step 3." *Shinlever v. Berryhill*, No. 3:15-CV-371-CCS, 2017 WL 2937607, at *4 (E.D. Tenn. July 10, 2017) (citing *Turbeville v. Colvin*, No. 1:12-CV-061, 2014 WL 6605483, at *10 (M.D. Tenn. Nov. 19, 2014) ("[Step Three and the RFC] are separate steps and a finding at one step does not necessarily equate to the same finding being made at a later step.")); *see also* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment . . . ."). Therefore, the ALJ was not required to include mental limitations in Plaintiff's RFC solely because the ALJ found that Plaintiff has mild limitations in concentration, persistence, or pace at Step Three. *See Ceol v. Berryhill*, No. 3:15–CV–315–CCS, 2017 WL 1194472, at *10 (E.D. Tenn. Mar. 30, 2017) ("Therefore, a finding by the ALJ that the Plaintiff has mild limitations in the areas

of daily living activities, social functioning, and concentration, persistence, or pace, does not necessarily mean that the Plaintiff will have corresponding limitations with regard to her RFC.").

Accordingly, the Court's inquiry turns to whether substantial evidence supports the ALJ's determination not to include mental limitations in Plaintiff's RFC. *See, e.g.*, *Shinlever*, 2017 WL 2937607, at *4–6 (reviewing Sixth Circuit case law to find that "the Court finds none of Plaintiff's cited authority requires an ALJ's RFC determination to mimic the specific 'paragraph B' findings assessed at Step 3," and therefore the appropriate inquiry is whether substantial evidence supports the ALJ's RFC assessment). "Courts . . . have also found, however, that an ALJ's failure to explain how a claimant's mild psychological limitations affect the RFC assessment may constitute reversible error where the ALJ makes no mention of the claimant's mental impairments in the RFC analysis." *Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-cv-11818, 2017 WL 3574694, at *6 (E.D. Mich. July 24, 2017) (internal citations omitted).

The RFC is the most an individual can do despite her limitations. 20 C.F.R. § 416.945(a)(1). When determining a claimant's RFC and the corresponding hypothetical, the ALJ need only include those limitations found to be "credible" and supported by the record. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). The RFC determination is expressly reserved for the Commissioner, not medical experts. 20 C.F.R. § 404.1546. However, "the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011). Although the ALJ retains a "zone of choice," she must explain why she did not include limitations assessed in contradicting medical opinions. *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 649 (6th Cir. 2013).

In the present case, remand is not warranted because the ALJ considered Plaintiff's non-severe mental impairments in her RFC analysis. First, the ALJ noted that Plaintiff's described daily activities were "not consistent with disabling mental or physical impairments." [Tr. 30, 36]. Next, the ALJ detailed that although Plaintiff claimed she was using mental health medications in February 2014, "evidently these were obtained from non-medical sources as there is no evidence of record that a medical professional prescribed these medications." [Tr. 33]. The ALJ stated that Plaintiff went more than three years without mental health treatment, and then received only minimal treatment at Cherokee Health Systems. [Tr. 35]. Ultimately, the ALJ held that "[t]his lack of professional mental health treatment indicates the mild nature of [Plaintiff's] symptoms as she did not require mental health therapy, or specialized treatment with a psychiatrist." [*Id.*].

When discussing opinion evidence, the ALJ assigned little weight to the opinion of Ms. Turbeville because she was not a mental health specialist, her opinion regarding Plaintiff's mental limitations was based on Plaintiff's self-reports, and Plaintiff "does not even have a mental impairment that meets the definition of a severe impairment." [Tr. 34]. Additionally, the ALJ assigned great weight to the opinion of Dr. Garland to the extent that it supported no more than mild mental limitations. [Tr. 35]. The ALJ found that her opinion, which stated that Plaintiff was mildly limited in adaption, and that she was mildly to moderately limited in her ability to persist and concentrate, was consistent with the overall medical record. [*Id.*]. Specifically, the ALJ detailed that Plaintiff's "minimal and sporadic mental health treatment . . . indicates the mild nature of [her] symptoms as she did not require mental health therapy, or specialized treatment with a psychiatrist." [*Id.*]; *see Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt

on a claimant's assertions of disabling pain.").  The ALJ also afforded great weight to the opinions of the nonexamining state agency medical consultants who found that Plaintiff has no more than mild mental health limitations.  [Tr. 36].

Therefore, the ALJ discussed Plaintiff's severe and non-severe impairments in determining Plaintiff's RFC and found that Plaintiff's mental impairments did not affect her RFC.  *See White v. Comm'r of Soc. Sec.,* 312 F. App'x 779, 787 (6th Cir. 2009) (holding that, "[o]nce one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe");  *Katona v. Comm'r of Soc. Sec.,* No. 14–CV–10417, 2015 WL 871617, at *6 (E.D. Mich. Feb. 27, 2015) ("[T]o the extent an ALJ determines that an identified impairment, severe or non-severe, does not result in any work-related restrictions or limitations, the ALJ 'is required to state the basis for such conclusion.'") (internal citations omitted).  Although the ALJ found that Plaintiff has mild limitations in concentration, persistence, or pace at Step Three, she explained during the subsequent RFC determination how these non-severe impairments did not affect Plaintiff's RFC, as Plaintiff's subjective allegations were not consistent with the objective medical evidence or Plaintiff's daily activities.  *Cf. Green v. Comm'r of Soc. Sec.*, No. 3:15-CV-910-TBR-CHL, 2017 WL 1160580, at *5 (W.D. Ky. Mar. 28, 2017) ("The Court agrees with Green that the ALJ erred in failing to include Green's mild mental limitations as a part of the residual functional capacity analysis."); *Stephens v. Astrue*, No. 09-55-JBC, 2010 WL 1368891, at *2 (E.D. Ky. Mar. 31, 2010) ("The ALJ thoroughly examined the medical evidence of Stephens's mental impairments in arriving at her conclusion that they were not severe at the second step, but the fourth step, where the ALJ made findings regarding Stephens's RFC, was devoid of any explicit reference to those impairments.").

Accordingly, "the ALJ did not find that the record demonstrated the need for specific work-based limitations related to concentration, persistence, or pace.  Therefore, the ALJ was under no obligation to incorporate into either the RFC or the hypothetical question such limitations." *Hayman v. Berryhill*, No. 3:16-cv-1998, 2017 WL 9476860, at *12 (N.D. Ohio Oct. 30, 2017).

### C.     Plaintiff's Subjective Allegations

Plaintiff asserts that the ALJ's rejection of her subjective allegations regarding the severity of her disabling impairments is not supported by substantial evidence.  [Doc. 20 at 18].  The Commissioner responds that the ALJ properly considered whether Plaintiff's allegations were consistent with the record, as the ALJ detailed how Plaintiff's daily activities and treatment record, as well as the objective medical evidence, were not consistent with Plaintiff's alleged symptoms and limitations.  [Doc. 24 at 4–10].

In the disability determination, the ALJ found that the medical record did not support Plaintiff's allegations.  [Tr. 37].  Ultimately, the ALJ found that although Plaintiff's medically determinable impairments "could reasonably be expected to cause *some* of the alleged symptoms . . . [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [Tr. 33].  First, with respect to the objective medical evidence of record, the ALJ noted a November 8, 2011 radiology report which revealed mild arthrosis of the right hip, as well as the May 21, 2013 MRI, which only demonstrated findings that suggest the presence of a fibroid within the anterior myometrium, as well as a small amount on nonspecific pelvic free fluid.  [Tr. 32].  Additionally, the ALJ detailed that Plaintiff's described daily activities were not limited to the extent of her claimed disabling symptoms and limitations, and Plaintiff's ability to "perform . . . a variety of daily activities is consistent with the medical evidence of record which indicates she is only slightly

24

limited by her mild hip degenerative changes." [Tr. 33]. The ALJ noted the mental and physical demands, as well as the amount of concentration and social interaction required to perform Plaintiff's daily activities, including assisting in raising her grandchildren. [*Id.*].

The ALJ also held that Plaintiff's subjective allegations were not entirely consistent, as Plaintiff made statements that were inconsistent with medical evidence of record, specifically with respect to drug use and pain medication obtained from non-medical sources. [*Id.*]. Further, the ALJ based her analysis that Plaintiff "has only received *conservative* treatment, and her allegations are disproportionate to the objective medical evidence." [*Id.*]. For example, the ALJ noted that Plaintiff had not received any treatment by a specialist or physical therapy for her hip pain and had not had any treatment since 2013. [*Id.*].

Social Security Ruling 96-7p articulates the standard for evaluating a claimant's subjective allegations, including those regarding pain, as follows.

> [O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.

1996 WL 374186, at *2 (July 2, 1996).[2] When objective medical evidence fails to substantiate a claimant's subjective allegations regarding the intensity, persistence, or functional effects of pain, the ALJ must make a credibility finding based on the entire case record. *Id.*

---

[2] At the time of the ALJ's decision, SSR 96-7p, 1996 WL 374186 (July 2, 1996), governed the ALJ's analysis of the credibility of Plaintiff's statements concerning her symptoms. That ruling was later superseded by SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), which eliminated the use of the term "credibility" in order to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029 at *1. However, "[b]ecause the text of SSR 16-3p does not indicate the SSA's intent to apply it retroactively," the Court will rely upon SSR 96-7p. *See Cameron v. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016).

Moreover, and in addition to considering objective medical evidence, the ALJ must consider the following factors in assessing a claimant's credibility: (1) daily activities; (2) the location, frequency, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (5) treatment, other than medication, received or have received for relief of pain or other symptoms; (6) any measures that are used or were used to relieve pain or other symptoms; (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *Id.* at *3 (citing 20 C.F.R. § 404.1529(c)).

The ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). However, the ALJ's finding must be supported by substantial evidence. *Id.* Finally, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.*

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence because the ALJ mischaracterized Plaintiff's ability to perform daily activities, her treatment with Ms. Turbeville, and her mental health treatment with Cherokee Health Systems. Ultimately, the Court is not persuaded by Plaintiff's contentions. Plaintiff first claims that the ALJ did not accurately depict her ability to care for her grandchildren, as she is only able to help raise two of her grandchildren who stay with her on a limited basis. [Doc. 20 at 19]. However, the ALJ properly discussed how Plaintiff's subjective allegations were not entirely consistent with her reported activities of daily living. For instance, the ALJ noted that Plaintiff was able to perform personal care, manage her finances, prepare simple meals, drive a car, pick up her grandchildren

at school, and help raise some of her grandchildren. [Tr. 33]; *see Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) ("The ALJ also properly took into account [the claimant's] daily activities, which included caring for two school-aged children and performing household chores."); *Dooley v. Colvin*, No. 2:15-cv-2425-cgc, 2015 WL 9077689, at *6 (W.D. Tenn. Dec. 16, 2015) ("Upon review, the ALJ appropriately considered Plaintiff's activities in evaluating his credibility . . . [w]hile the ALJ could have been more precise as to Plaintiff's activities with his grandchildren and his yard work, his findings as a whole as to Plaintiff's daily activities are supported by the substantial, legitimate evidence in the record."), *aff'd sub nom.*, 656 F. App'x 113 (6th Cir. 2016).

Next, Plaintiff challenges the ALJ's characterization of her treatment history, as she claims that her treatment with Ms. Turbeville was not sporadic. [Doc. 20 at 20]. Plaintiff asserts that she was treated by Ms. Turbeville from October 11, 2011 through May 14, 2013, and was seen three times in 2011, five times in 2012, and five times in 2013. [*Id.*]; *see* [Tr. 468–69]. Plaintiff also testified that she was forced to stop seeing Ms. Turbeville because her office closed unexpectedly. [Tr. 60].

However, the ALJ stated that Plaintiff "only received conservative treatment," and her allegations were "disproportionate to the objective medi[cal] evidence." [Tr. 33]. Ultimately, the level of treatment is a relevant factor for an ALJ to consider in assessing an individual's credibility. *See* SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996) ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints[.]"). When analyzing Plaintiff's allegations of hip pain, the ALJ considered Plaintiff's treatment with Ms. Turbeville in conjunction with Plaintiff's lack of treatment by a specialist, physical therapy, or a recommendation of surgery. [Tr. 33].

Additionally, the ALJ noted that Plaintiff had not received any medical treatment for the claimed disabling impairments since 2013. [*Id.*]. Therefore, the ALJ properly reviewed Plaintiff's allegations of hip pain against the conservative treatment that she received, including her treatment with Ms. Turbeville. *See Kolar v. Comm'r of Soc. Sec.*, No. 1:14-cv-503, 2015 WL 5589265, at *8 (W.D. Mich. Sept. 22, 2015) (holding it was reasonable for the ALJ to describe "three follow-up examinations in 2011, one examination . . . in 2011, and six visits . . . in 2012" for back pain as sporadic "[g]iven the level of pain and functional limitations that plaintiff claimed in his hearing testimony"); *Robertson v. Colvin*, No. 4:14-cv-35, 2015 WL 5022145, at *5 (E.D. Tenn. Aug. 24, 2014) (finding the ALJ properly discounted Plaintiff's subjective complaints because "the ALJ also considered that Plaintiff received routine, conservative care for his impairments") (citing *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 473 (6th Cir. 2014)).

Lastly, Plaintiff claims that the ALJ's statement that she received mental health treatment with Cherokee Health Systems in 2016 in an attempt to bolster her case is not legally or factually supported. [Doc. 20 at 20]. Plaintiff testified that after losing her insurance, she did not try to gain free medical treatment at Cherokee Health Systems, and instead tried to obtain medical treatment from InterFaith Health Clinic. [Tr. 52]. After being unsuccessful, Plaintiff then placed her name on the six-month waiting list at Cherokee Health Systems [*Id.*], and was first seen on January 22, 2016 [Tr. 524].

Social Security Ruling 96–7p provides that an ALJ "must not draw any inferences about an individual's symptoms . . . from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide," such as that an "individual may be unable to afford treatment and may not have access to free or low-cost medical services." SSR 96–7p, 1996 WL 374186, at *7–8 (July 2, 1996). However, contrary to Plaintiff's claim, the

ALJ considered Plaintiff's ability to obtain free or low-cost medical treatment, including her testimony to obtain treatment through InterFaith. The ALJ noted that Plaintiff did not receive any medical treatment from July 2013 until 2016 and did not provide "an explanation for not seeking free treatment from Cherokee for those three years even though she admitted she had been there before for treatment." [Tr. 34]. Further, the ALJ detailed that Plaintiff "knew of the free treatment options available at Cherokee yet chose not to avail herself of these free treatment options," which is "not consistent with her allegations of disabling pain and mental impairments." [Tr. 35]. Lastly, the ALJ also noted Plaintiff's mild treatment with Cherokee Health Systems, detailing that Plaintiff "only had a behavioral intake evaluation and one-follow up visit." [*Id.*].

Ultimately, the ALJ found that Plaintiff's limited mental health treatment, as well as Plaintiff's failure to obtain free mental health treatment, were inconsistent with her subjective allegations of disabling mental health treatment.[3] *See Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment."); *Raymond v. Astrue*, No. 3:11-0055, 2012 WL 210743, at *18 (M.D. Tenn. Jan. 24, 2012) ("[T]he ALJ did not err in evaluating the plaintiff's lack of mental health treatment during her alleged period of disability. The lack of continuous mental health treatment was only one of multiple factors that the ALJ took into account in assessing her credibility . . . ."), *report and*

_____

[3] While the Court agrees that the ALJ improperly characterized Plaintiff's treatment with Cherokee Health Systems as "an obvious attempt to bolster her case" [Tr. 33], substantial evidence still exists to support the ALJ's credibility assessment, including Plaintiff's limited and mild mental health treatment. *See Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)) ("[E]ven if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it.").

*recommendation adopted by*, 2012 WL 441171 (M.D. Tenn. Jan. 24, 2012); *Washington-Wheeler v. Comm'r of Soc. Sec.*, No. 08–14960, 2010 WL 3766329, at *7 (E.D. Mich. Jan. 26, 2010) ("While Plaintiff's economic situation undoubtedly influenced her course of treatment, she has not shown that any economic barrier prevented her from receiving treatment at government facilities."). Additionally, the ALJ's opinion "does not suggest that [s]he regarded [Plaintiff's] failure to seek medical examination or treatment as 'a determinative factor'" in her credibility assessment. *Strong*, 88 F. App'x at 846; *see, e.g.*, *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 436 (6th Cir. 2013) (citing *Boulis–Gasche v. Comm'r of Soc. Sec.,* 451 F. App'x 488, 493 (6th Cir. 2011)) ("[A] claimant's failure to seek mental health treatment is not probative of whether a mental impairment exists and should not be determinative in a credibility assessment.").

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (internal citation omitted). The Sixth Circuit has held that the Court must accord great deference to an ALJ's credibility assessment, particularly "because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (internal citations omitted). In the present case, the ALJ properly evaluated Plaintiff's credibility pursuant to the applicable regulations and policies. *See* 20 C.F.R. § 404.1529; Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996). Specifically, the ALJ detailed the various factors that she considered in her credibility assessment, including inconsistencies between Plaintiff's subjective allegations and the objective medical evidence, Plaintiff's reported daily activities, Plaintiff's statements that were inconsistent with the medical evidence of record, and Plaintiff's sporadic and conservative treatment. Therefore, the ALJ complied with the regulations, and her credibility determination is

supported by substantial evidence.

## VI.      CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 19**] will

be **DENIED** and the Commissioner's Motion for Summary Judgment [**Doc. 23**] will be

**GRANTED**.  The decision of the Commissioner will be **AFFIRMED**.  The Clerk of Court will

be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge